UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.           )<br>)<br>WALDIR DEOLIVEIRA        )<br>) | CASE NO. 04-10016 |

## DEFENDANT'S SENTENCING MEMORANDUM

Waldir DeOliveira, the defendant, through his counsel, submits this memorandum in aid of sentencing.

## I.   INTRODUCTION

Pursuant to the landmark U.S. Supreme Court decision on January 12, 2005 in U.S. v. Booker, __ U.S. ___, 125 S.Ct. 738, 2005 WL 50108 (2005) the United States Sentencing Guidelines ("USSG" or the "Guidelines") are no longer to be treated as mandatory in their application, but are to be considered advisory.[1] In explaining the ongoing importance of the Sentencing Reform Act of 1984 (the "Act") to sentencing decisions after Booker, the Supreme Court stated:

> Without the "mandatory" provisions, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals. See 18 U.S.C.A. § 3553(a) (Supp.2004). The Act nonetheless requires judges to consider the Guidelines "sentencing range established for ... the applicable category of offense committed by the applicable category of defendant," § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and Supp. 2004). And the Act nonetheless requires judges to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care. § 3553(a)(2) (main ed. and Supp.2004).

---

[1] Various lower courts had presaged the Supreme Court's ruling in Booker. See, e.g., U.S. v. Mueffelman, 327 F.Supp.2d 79 (D. Mass. 2004) (Gertner, J.).

1

Booker, 2005 WL 50108 at *24 (Breyer, J., delivering the opinion of the Court in part).[2] A sentencing decision is now to be measured by the standard of reasonableness. Id. at *25.

The following discussion is intended to aid the court in its determination of the appropriate reasonable sentence for the defendant, in light of Booker.

For the reasons stated below, the defendant recommends that he be sentenced to time served since his arrest on December 1, 2003. In its Presentence Report (PSR), The Probation Officer writes that the defendant has been in state custody since December 8, 2003. PSR, paragraph 100, page 22. In fact the defendant was in state custody, in connection with the instant offenses, from December 1, 2003 until February 9, 2004.

## II. DEFENDANT'S BACKGROUND

Waldir Francisco DeOliveira was born November 2, 1955 into a poor family in Sao Paulo, Brazil. He is 49 years old. Mr. DeOliveira graduated from high school in 1973 and joined the Brazilian army where he served successfully for one year.

Following his Brazilian military service, Mr. DeOliveira attended a cooking school (Escola de Articulinaria Bordeaux) in Brazil, from which he graduated in 1977. He also attended community college in Illinois from 1982 to 1984, and took additional courses at Western Illinois University in 1985 and 1987. He is fluent in Portuguese and English, and speaks Spanish, Hebrew, German and French.

Mr. DeOliveira came to the Los Angeles, California, 1977, at age 21, and began working at various restaurants and taking classes in English as a Second Language. Mr.

---

[2] Elsewhere in its opinion, the Court states, "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." U.S. v. Booker, __ U.S. __, 125 S.Ct. 738, 2005 WL 50108 *27 (2005) (Bryer, J. delivering the opinion of the Court in part).

2

DeOliveira was married in Los Angeles in 1978, and had three sons, presently aged 21 to 24. All three sons are observant Mormons. Two sons are in college, and one is performing Mormon missionary service in Taiwan. Mr. DeOliveira was divorced in 1990.

Mr. DeOliveira became a naturalized U.S. citizen on April 25, 1986 in Chicago. He enlisted in the U.S. Army National Guard in June 1986, where he served until his enlistment in the U.S. Army in October 1987. Since leaving the Army in 1990, Mr. DeOliveira has lived in various places in the United States, holding a variety of jobs using his culinary skills. Like his sons, Mr. DeOliveira is a devout Mormon.

### III.  DETERMINATION OF GUIDELINES SENTENCE FOR ADVISORY PURPOSES

In its Presentence Report (PSR), the Probation Office determines the Defendant's total offense level to be Level 14, and his Criminal History Category to be III, resulting in a U. S. S. G. sentencing range of 21 to 27 months. PSR ¶¶ 36 – 50, 64-67.

In the following discussion, the defendant will first discuss the reasons he disputes the total offense level calculated in the PSR. Second, the defendant will briefly discuss the establishment of Criminal History Category III. Third, the defendant demonstrates why, even if the court were to find that the correct sentencing range under the U. S. S. G. to be 21 to 27 months or 12-18 months or 18-24 months, a shorter sentence is appropriate in this case. Specifically, the defendant recommends that he be sentenced to his time served since his arrest on December 1, 2003 and not December 8, 2003 as stated in the PSR.

3

A.   Improper USSG calculations in the PSR

As noted in the Addendum to the PSR, Mr. DeOliveira objects to the two-level increase under USSG § 2B1.1(b)(8)(A). The Probation Office recommends that increase because "the instant offense involved the defendant misrepresenting that he was acting on behalf of a government agency, the United States Immigration and Naturalization Service." PSR ¶ 43.

The defendant objects to this two-level increase for two reasons. First, the charged offense in each of counts 2-6 of the indictment is "false impersonation of a U.S. officer or employee." The offense level for that offense is generally determined under USSG § 2J1.4, which sets the base offense level for false impersonation at 6. Thus, the Sentencing Commission determined that a base offense level of 6 adequately punishes that offense. As noted in the PSR, USSG § 2J1.4(c) (Cross Reference), provides that if the impersonation was to facilitate another offense, the guideline for that other offense should be applied if the offense level under that other offense would be greater than the offense level under § 2J1.4.

The Probation Office correctly found that the guideline for the offense that the impersonation was to facilitate, USSG § 2B1.1 (Fraud and Deceit), yields a greater offense level than § 2J1.4. The base offense level under § 2B1.1 is 7, and, according to the PSR, that level should be increased by 6, due to amount of loss. Thus, under the USSG scheme, the impersonation offense was subsumed into the fraud offense. It is unreasonable to resurrect the impersonation offense by stacking a two-level increase due to the impersonation onto the offense level for the fraud.

4

Second, and perhaps more important, the enhancement under § 2B1.1(b)(8)(A) is misplaced on the facts of this case. That guideline subsection imposes an increase "[i]f the offense involved [...] a misrepresentation that the defendant was acting on behalf of a [...] government agency." USSG § 2B1.1(b)(8)(A). The PSR's description of the offense characteristics clearly demonstrates that the defendant's modus operandi in counts 2 through 6 was to impersonate an INS employee, and then promise to circumvent INS rules in return for obtaining, as stated in those counts of the indictment, "immigration, naturalization and legal work documents" for the alleged victims in contravention of INS procedures. PSR, ¶¶ 6-10.[3] Thus, the defendant clearly was not misrepresenting that he was working on behalf of a government agency. Rather, he was fraudulently indicating to his alleged victims that in return for an illegal payoff he would procure INS documents for them.

If this adjustment were removed from the equation, and if the PSR were followed in all other respects, the total offense level would be 12, resulting in a USSG range of 15-21 months. The defendant would ask the court to sentence the defendant for time served, which would constitute a sentence towards the low end of the applicable sentencing range.[4]

The Probation Officer determined that the defendant has a subtotal criminal history score of 2. The Probation Officer determined further that, pursuant to U. S. S. G. section 4A1.1 (e), two points should be added resulting in the criminal history score of 4.

---

[3] As the government succinctly described the defendant's conduct in its objection to the presentence report, the defendant "purported to be an INS officer who could provide individuals with green cards in return for payment."

[4] See next subsection of this memorandum for a discussion of the amount of time the defendant has served to date.

According to the Sentencing Table (U. S. S. G. Chapter 5, Part A) 4-6 criminal history points establish a Criminal History Category of III.

The defendant suggests that Criminal History Category of II would be more appropriate under these circumstances. The defendant was released from custody on 3/5/01 for the sentence imposed in Madison, Nebraska on 2/22/01. He was given two additional points because "[t]he instant offense was committed less than two (2) years following the defendant's release from custody on 3/5/01 for the sentence imposed on 2/22/01...". See Presentence Report, paragraph 65, page 15.
A review of the Superceding Indictment indicates that the offenses alleged in Counts 1-3 were committed within two years of the defendant's release from custody. However, the offenses alleged in Counts 4-6 were not committed within two years of the defendant's release from custody. It is clear that some portion of the underlying offenses were not committed within two years of the defendant's release from custody. Without the additional two points the defendant's Criminal History Category would be II and not III. As a compromise the defendant suggests that one additional point be assessed since only some of the instant offenses were committed within two years of the defendant's release date. This compromise would give the defendant three points establishing a Criminal History Category of II.

In its Presentence Report (PSR), the Probation Office determines the Defendant's total offense level to be Level 14. If the Criminal History Category was established to be II, the resulting U. S. S. G. sentencing range would be 18-24 months.

6

If this Court determines the Defendant's total offense level to be Level 12 and the Criminal History Category was established to be II, the resulting U. S. S. G. sentencing range would be 12-18 months.

B.  Recommended sentence

Title 18 U.S.C. § 3553(a) provides in relevant part that the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [set forth in § 3553(a)(2)] (emphasis supplied)." Those purposes are set out in the quotation from Booker, above.

Whether the court determines that the USSG total offense level would be level 14 or level 12, and taking into account the now advisory purpose of the USSG sentencing range, the defendant suggests to the court that a sentence to time served is sufficient to meet the goals of sentencing.

The defendant has been in custody since December 1, 2003, a period of 14 months and 16 days as of February 16, 2005, the date scheduled for sentencing. When his statutory credit pursuant to 18 U.S.C. § 3624(b) of 54 days per year is taken into account, the defendant has effectively served the equivalent of a sentence of more than 16 months as of the date scheduled for sentencing.[5] This is within the sentencing range for a total offense level of 12, which the defendant argues above would be the proper range under the Guidelines, if the PSR is accepted in all respects except for the misapplication

---

[5] Whatever sentence is imposed by the court, if the defendant were returned to prison the Bureau of Prisons would be required under 18 U.S.C. sec. 3585(b)(1) to credit him with all time served since his arrest on December 1, 2003. See, e.g., U.S. v. Moore, 978 F.2d 1029 (8th Cir. 1992) (defendants convicted on federal charges entitled to credit on federal sentence for time served in state custody pending trial on subsequently dismissed state charges arising out of the same incident). The defendant recognizes that it is for the BOP, and not the court, to grant the credit, so he urges the court, in imposing a reasonable sentence, to sentence to him to time already served, rather than to a 16-month (or other term) sentence, which would require his return to prison to await BOP action.

7

of the two-level enhancement under USSG § 2B1.1(b)(8)(A), and if no downward departure were imposed.

If the Guidelines were strictly applicable, the defendant would argue for a downward departure due to the medical conditions he suffered from during his pretrial incarceration. USSG § 5H1.4 (Policy Statement) provides that "[p]hysical condition [...] is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward [...]."

During his time in custody awaiting trial, the defendant has suffered from extremely painful hemorrhoids and from a scrotal cyst. The defendant brought his medical issues to the attention of his jailers at least as early as January, 2004. Yet his complaints were largely ignored for many months. Eventually, the defendant was operated on for each of these conditions, the hemorrhoids in September 2004 and the cyst in October 2004.

Thus, the fact of incarceration caused the defendant to suffer from these painful conditions for significantly longer than he otherwise might have suffered before receiving proper diagnoses and treatment, significantly increasing the punitive effect of his incarceration.

Tracking the language quoted above from Booker, a sentence to time served to date would adequately reflect "the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, [and] protect the public." Extending his incarceration will do nothing to "effectively provide the defendant with needed educational or vocational training [or] medical care."

8

Respectfully submitted,
WALDIR DEOLIVEIRA,
Defendant,
By his attorney,

*/s/ Stephen J. Weymouth*
Stephen J. Weymouth
65a Atlantic Avenue
Boston, MA 02110
(617) 573-9598
BBO No. 523680

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the foregoing Sentencing Memorandum on the government by mail to Assistant United States Attorney Seth Berman, Moakley Federal Courthouse, One Courthouse Way, Boston, MA 02210 on February 9, 2005.

February 9, 2005                                    */s/ Stephen J. Weymouth*
                                                    Stephen J. Weymouth